Filed 6/15/15  In re A.R. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re A.R. et al., Persons Coming Under the Juvenile Court Law. | B258605 <br><br> (Los Angeles County <br> Super. Ct. No. CK69482) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> REBECCA R., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Timothy R. Saito, Judge.  Dismissed in part and conditionally affirmed in part with directions on remand.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Rebecca R., the mother of A.R. and T.F., appeals from the juvenile court's jurisdiction findings and disposition orders declaring the children dependents of the juvenile court, removing them from her care and custody and placing them with their father, Lester F., under the supervision of the Los Angeles County Department of Children and Family Services (Department). Rebecca contends the findings and orders were not supported by substantial evidence, and the juvenile court failed to provide proper notice as required by the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA).) We dismiss the appeal from the disposition order as moot, remand the matter to allow the juvenile court to comply with ICWA and otherwise conditionally affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 21, 2014 the Department received a referral from a family housing shelter alleging that, two days earlier, Rebecca, a resident of the shelter, had been volatile during lunch and had stated she would kill herself if she had a gun. A short time later the older child, A.R. (age three), was observed to have cuts and bruises on his face. A shelter worker accompanied Rebecca and the children to a hospital for treatment of A.R.'s injuries, which, Rebecca claimed, had occurred when he tripped over a stroller and fell on the hard tile floor.

Rebecca was known to the Department; Rebecca's parental rights to two older children had been terminated in 2009 and 2010 as a result of her substance abuse and mental illness. A.R. and T.F. had been detained pursuant to Welfare and Institutions Code section 300[1] in November 2012, and jurisdiction had been terminated in September 2013. Most recently, an October 2013 referral alleging emotional abuse and general neglect of the two younger children had been investigated but, ultimately, closed.

A Department social worker and two Los Angeles police officers responded to the April 2014 referral and spoke with several witnesses. Explaining her outburst about

---

[1] Statutory references are to this code unless otherwise indicated.

shooting herself, Rebecca said she had been joking about a water pistol and not a real gun because of the heat. She admitted, however, she had been upset by a male shelter resident who had harassed her. She also stated she had been in the bathroom of her apartment when A.R. tripped over the stroller and fell on his face, an account initially corroborated by another shelter resident. The resident then admitted she had not been in Rebecca's room when A.R. fell. Questioned, A.R. told the social worker his mommy had thrown him to the floor but was then easily induced to blame other adults, including one of the officers, for hurting him. A security guard told the social worker Rebecca had seemed reluctant to take A.R. to the hospital and asked if she should apply makeup to his bruises before going. The social worker decided to detain A.R. and T.F. after a nurse at the hospital stated A.R.'s injuries were consistent with child abuse. When contacted about placement, Lester told the worker he could not take the children until later in the week.

The Department filed a section 300 petition alleging the children were at risk of harm in parental custody due to Rebecca's physical abuse of A.R. and her own mental and emotional problems, as well as Lester's inability to care for them. (§ 300, subds. (a), (b) & (j).) The petition also acknowledged the children may have Indian ancestry and may be eligible for membership in the Comanche tribe through Rebecca. At the detention hearing Rebecca's counsel, who had represented her in a previous proceeding, informed the court he believed Rebecca's previous assertion of Indian ancestry and ICWA notice had not resulted in any interest by the tribe. Nonetheless, the court directed counsel to submit a new ICWA form for the Department to use in contacting the tribe.[2] The court found a prima facie case had been made the children were persons described by section 300 and ordered them detained and placed in shelter care.

---

[2] The minute order from the hearing, however, stated the children were found not to be subject to ICWA, a finding that was repeated in future minute orders.

In anticipation of the contested jurisdiction hearing the Department conducted a prerelease investigation of Lester and reported his one-bedroom apartment appeared to be adequate and safe for the children. Lester, however, had been diagnosed with cannabis dependency and a substance-induced psychotic disorder and continued to use marijuana. Also, a 1999 allegation Lester had sexually abused his four-year-old nephew had previously been substantiated although the criminal charges were dismissed.

The jurisdiction/disposition hearing began on May 15, 2014 and continued over the course of several days. Rebecca testified consistently with her statements to the social worker and denied she had abused either child. She also explained she had been upset on the day of the incident because a male resident had been harassing her at lunch, but insisted she was not suicidal and had been joking when she said she would shoot herself if she had a gun.[3] Lester also testified and stated he wanted to provide a home for the children, including A.R., whom he had raised since the age of four months. Lester acknowledged his psychiatric diagnoses but maintained he had a medical prescription for marijuana and was under the continuing care of a psychiatrist who monitored his medication. The court subsequently heard testimony from the shelter resident who again claimed she saw A.R. trip over the stroller, the social worker who had investigated the incident, the responding police officers and a security guard at the shelter.

Based on this testimony, the court dismissed the allegations regarding physical abuse but sustained the allegation that Rebecca's mental problems created a risk of harm to the children.[4] The court explained it believed Rebecca's statements were inconsistent

_____

[3]  An August 2013 evaluation of Rebecca's mental state was admitted into evidence. The report found Rebecca was "well-oriented to time and place" with "no evidence of a thought disorder" but exhibited defensive thought patterns and depression.

[4]  Although the court dismissed the allegations of physical abuse, which were asserted under section 300, subdivisions (a) and (j), as well as subdivision (b), the minute order from the jurisdiction hearing on May 27, 2014 states the subdivision (a) and (j) counts were sustained as to A.R. The minute order also incorrectly reflects the subdivision (b) count alleging Rebecca's inability to care for the children because of

4

and irrational under the circumstances and that her emotional distress appeared to interfere with her ability to care for the children. As to Lester, the court found he was the presumed father of A.R. and, after dismissing the allegation Lester was not available to care for the children, released the children to him. The court continued the disposition hearing to obtain an updated mental evaluation of Rebecca.

On August 4, 2014 the court reconvened the disposition hearing. According to the updated psychological evaluation, Rebecca was not as defensive or depressed as she had been the previous year. The psychiatrist noted, however, in light of her defensiveness he could not rule out that she "'share[d] traits in common with individuals known to have abused children.'" After receiving this evidence, the court declared the children dependents of the court, removed them from Rebecca's custody and ordered them to remain in Lester's custody under Department supervision with monitored visits by Rebecca. Rebecca was ordered to participate in individual counseling and parenting classes, to take all prescribed medication and undergo further evaluation if necessary.

Rebecca appealed from these orders. At the Department's request, we take judicial notice of the court's February 2, 2015 order terminating its placement of the children with Lester and placing them in the homes of both parents under Department supervision.

## DISCUSSION

1. *Substantial Evidence Supports the Juvenile Court's Jurisdiction Findings*

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's

mental and emotional problems—the basis for dependency jurisdiction in this case—was dismissed as to A.R. The minute order fails entirely to record which count was sustained as to T.F. These errors are carried forward in subsequent minute orders, which incorrectly identify the bases for jurisdiction. They must be corrected.

5

determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.""" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate. (*Ibid.*; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

Section 300, subdivision (b), authorizes the court to adjudge a child a dependent of the juvenile court if: "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse." A true finding under subdivision (b) requires proof of: "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M*. (1991) 1 Cal.App.4th 814, 820.) "The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future . . . .'" (*In re James R*. (2009) 176 Cal.App.4th 129, 135.) Cases finding a substantial physical danger to a child "tend to fall into two factual patterns. One group involves an *identified, specific hazard* in the child's environment—typically an adult with a proven record of abusiveness. [Citations.] The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety." (*In re Rocco M.,* at p. 824.) As numerous courts have recognized, a juvenile court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (See, e.g., *In re N.M.* (2011) 197 Cal.App.4th 159, 165; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.)

There is no doubt the Department and the court were mindful of Rebecca's lengthy history of referrals and documented mental instability when faced with the

6

decision to detain her young children and then to exercise jurisdiction over them. Although the court dismissed the allegations related to the possible physical abuse of A.R., Rebecca's volatility and apparently bizarre reactions to relatively ordinary events convinced the court to assert its jurisdiction over the children by sustaining the allegation related to her mental instability.[5] The court found her statements about shooting herself with a gun "inconsistent and irrational under the circumstances" and rejected her excuse she was joking about a water gun. Her agitation, the court observed, prevented her from "appropriately address[ing] her children's needs . . . [or] the daily challenges which accompany the care of her children." The court also observed that Rebecca had failed to respond immediately to the seriousness of A.R.'s injury and had then questioned whether she should apply makeup to cover up his bruises.

The concerns identified by the court amply support its jurisdiction ruling. Viewed over time, Rebecca appears to be maturing personally and maternally. But her significant history and ongoing struggles to control herself were appropriate considerations for the court in determining whether Departmental supervision was warranted. (See *In re Christopher R., supra,* 225 Cal.App.4th at p. 1216 [a parent's "'"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue'"]; *In re N.M., supra,* 197 Cal.App.4th at p. 165 [the court may consider past events in deciding whether a child presently needs the court's protection].) On this record, we find no error.

2. *Rebecca's Appeal from the Disposition Order Is Moot*

Rebecca also appeals from the August 4, 2014 order removing the children from her care and custody. That order was terminated by the court in February 2015 and

---

[5] The allegation sustained by the court stated: "The children['s] . . . mother, Rebecca R[.], has mental and emotional problems including suicidal ideation, which render the mother unable to provide regular care and supervision of the children. On or around, 04/19/2014, the mother threatened to kill herself with a gun. The mother failed to obtain recommended mental health treatment. Such mental and emotional problems on the part of the mother endangers the [children's] physical health and safety and places the [children] at risk of physical harm, damage and danger."

replaced by a home-of-parents order. Answering the Department's contention her appeal from this order is moot, Rebecca argues the court's findings in support of its removal order may prejudice her in future proceedings involving custody of her children.

Generally speaking, an appeal from an juvenile dependency order that has been superseded by subsequent events is moot. (See *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488; *In re A.R.* (2009) 170 Cal.App.4th 733, 740; *In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1404; see generally 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 749, p. 814 ["[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed."].) "However, dismissal for mootness in such circumstances is not automatic, but 'must be decided on a case-by-case basis.' [Citations.] [¶] 'An issue is not moot if the purported error infects the outcome of subsequent proceedings.'" (*In re C.C.,* at p. 1488.)

There is no real danger in this case the court's August 2014 removal order, or the findings made in support thereof, will prove detrimental to Rebecca in future proceedings if allowed to stand. The order has been superseded by the February 2015 home-of-parents order. Rebecca has a long history with the Department, and the issues affecting her ability to parent her children are complicated and ongoing. Any court faced in the future with a decision about Rebecca's ability will be cognizant of this history and will consider the facts and circumstances as they exist at that time.

3. *The ICWA Finding Is Remanded for Proper Inquiry and Notice to the Appropriate Tribe(s)*

At the beginning of this case Rebecca advised the Department that she had Comanche ancestry but was not a member of the tribe and had never lived on the reservation. The minute order entered after the detention hearing incorrectly stated the court had found ICWA did not apply. In fact, in response to Rebecca's counsel's remark he believed a former ICWA inquiry had gone nowhere, the court ordered counsel to

8

prepare a new ICWA form and the Department to conduct an appropriate investigation: "Please fill out a new ICWA form. I'm going to ask the Department to follow up on that."[6]

Because the court and the Department failed to comply with the requirements of ICWA once Rebecca had indicated her possible Indian ancestry, the disposition order, which incorporated the invalid IWCA finding, may only be conditionally affirmed. A limited remand is required:[7] Upon remand the juvenile court shall direct the Department to make further inquiries regarding the children's ancestry and possible Indian status (§§ 224.1, 224.3) and, if appropriate, send ICWA notices to the relevant tribe(s) in accordance with ICWA and California law. (See § 224.2, subd. (a); *In re Jovanni B.* (2013) 221 Cal.App.4th 1482, 1495; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1169.) The Department shall thereafter notify the court of its actions and file certified mail, return receipts for any ICWA notices that were sent together with any responses received. The court shall then determine whether the ICWA inquiry and notice requirements have been satisfied and whether A.R. and T.F. are Indian children. If the court finds they are Indian children, it shall conduct a new disposition hearing, as well as all further proceedings, in compliance with ICWA and related California law.

---

[6]    The minute order does not accurately reflect this order; instead, it states: "Based on counsel's representation Court finds ICWA does not apply as to mother."

[7]    Even though the children are currently placed with Rebecca by virtue of the home-of-parents order, California Rules of Court, rule 5.480 requires ICWA inquiry and notice in all cases in which an Indian child may be involved, even if removal from the parent with Indian ancestry has not been requested by the Department or ordered by the court.

9

## DISPOSITION

The appeal from the portion of the disposition order directing removal of the children from Rebecca is dismissed as moot. The matter is remanded for compliance with ICWA and related California law as set forth above. The juvenile court is also directed to correct the minute order from the jurisdiction hearing to properly reflect the court's actual decision sustaining and dismissing allegations of the section 300 petition. In all other respects, the jurisdiction findings and disposition orders are affirmed.


                                                            PERLUSS, P. J.
        We concur:



        ZELON, J.



        IWASAKI, J.[*]


_____

[*]      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.