Filed 12/11/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re JOVANNI B., a Person Coming Under the Juvenile Court Law. | B246197 |
| | (Los Angeles County Super. Ct. No. CK92293) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| JOHN B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Valerie Skeba, Juvenile Court Referee.  Reversed and remanded.

Andrea R. St. Julian, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

Jovanni B. was born in June 2012 to Andrea F. (mother). Two men claim to be his father: appellant John B., who was living with mother when Jovanni was born and signed a voluntary declaration of paternity, and Brian H., Jovanni's biological father. When DNA tests showed John was not Jovanni's biological father, the juvenile court dismissed John from the proceedings and offered reunification services to Brian. John appeals from those orders, contending that because he signed a voluntary declaration of paternity, he is entitled to presumed father status. He also contends that the trial court erred in failing to require an investigation of mother's possible Indian ancestry, as required by the Indian Child Welfare Act (ICWA).

We agree with John that the DNA test results are not dispositive of his right to participate in these proceedings. We disagree, however, that John is entitled to presumed father status merely because he signed a voluntary declaration of paternity. We remand the matter for the juvenile court to consider whether, in view of the DNA test results, setting aside John's voluntary declaration of paternity is appropriate under the facts of this case (Fam. Code, § 7575), whether John is entitled to presumed father status (Fam. Code, § 7611, subd. (d)), and for investigation of Jovanni's possible Indian heritage.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Petition and Detention

The Los Angeles County Department of Children and Family Services (DCFS) filed a juvenile dependency petition on August 17, 2012, asserting jurisdiction over Jovanni pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (b).[1] It asserted: (1) Mother and John have a history of engaging in violent altercations in Jovanni's presence. On August 11, 2012, John threatened to kill mother, struck her in the face and body with his fists, struck her arm with a machete, and refused to let mother leave the home or call law enforcement. John was intoxicated at the time of the attack.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

2

(§ 300, subds. (a), (b).) (2) John has a history of substance abuse and is a current abuser of alcohol, which endangers the child's physical health and safety and creates a detrimental home environment. (§ 300, subd. (b).)

DCFS filed a detention report on August 17, 2012. It stated as follows. On June 5, 2012, DCFS received a referral alleging emotional abuse of two-day-old Jovanni. Mother and John, who were living together with Jovanni, agreed to participate in voluntary family maintenance and to receive services. Mother identified John as Jovanni's father, and John signed the voluntary family maintenance plan as the father.

On August 13, 2012, mother told her social worker that John had been jailed on August 11 because he became violent while drinking and attacked her with a machete. She and Jovanni currently were staying at a safe location, and John remained incarcerated. Mother explained that on the night of August 11, she had wanted to take Jovanni to her Alcoholics Anonymous (AA) sponsor's house because John was drinking, but John would not let her leave. She attempted to call 911, but John took her phone. A neighbor called 911 and John was arrested. Mother said she had obtained a temporary restraining order against John and would be seeking a permanent restraining order. She had moved out of the home where she had been living with John and would not be returning.

Mother also disclosed to the social worker that Brian, not John, was Jovanni's biological father. Mother said she had been six months pregnant with Jovanni when she met John. Brian had visited Jovanni, but always in her presence. Mother also said she has Vergo Native American heritage, but was not registered with a tribe.

John admitted to the social worker that mother had been pregnant when he met her, but said that admission was "off the record." He said he was willing to take a paternity test, that he would consent to Jovanni's detention, and that "if you guys (DCFS) want me out of Jovanni's life, I am willing to do that."

Brian told the social worker that he was not sure if he was Jovanni's father, but he was willing to take a paternity test and would like to be involved in Jovanni's life if he were the father. On August 17, 2012, he filed a "Statement Regarding Parentage," in

3

which he stated that he did not know if he was Jovanni's father and requested a paternity test. The same day, mother filed a notice of Indian status, stating that she may have Indian ancestry but was not sure of the name of the tribe to which she might be eligible for membership.

The juvenile court held a detention hearing August 17, 2012. The court found a prima facie case that Jovanni was a child described by section 300, subdivision (b), and ordered Jovanni released to mother. It ordered Brian to submit to a DNA test and deferred making paternity findings pending receipt of the DNA test results. With regard to Indian heritage, the court said any Indian heritage appeared "very remote," but ordered DCFS to interview mother. Finally, it denied John visitation and granted Brian monitored visits.

The court held a further hearing on September 17, 2012. At that time, the court entered a temporary restraining order against John, ordered John to submit to a DNA test, and said it would find John the father "only . . . if it [paternity test] establishes there is a biological link."

## II. Adjudication

In a last minute information for the court filed November 27, 2012, DCFS informed the court that Brian had submitted to a DNA test but had not otherwise been in contact with DCFS. The DNA test showed Brian was Jovanni's father. Mother reported that she and Brian were living in sober living residences and Brian saw Jovanni every other day at AA meetings. Mother monitored those visits. Brian was reported to have been convicted of domestic violence in 1999 and of conspiracy in 2004. He had a 2001 drug-related arrest but had not been convicted. DCFS recommended that Brian have no contact with Jovanni until he contacted DCFS, that any visits thereafter be monitored by a DCFS-approved monitor, and that Brian be required to submit to random drug and alcohol testing.

The court held an adjudication hearing on November 27, 2012. At the hearing, the court excused John from the proceedings because "the DNA tests have shown that you

4

are not the father of the child." It accepted mother's no contest plea to the amended petition, sustained as true by a preponderance of the evidence the amended count B-1, and dismissed counts A-1 and B-2 without prejudice. It then ordered Jovanni placed with mother under DCFS supervision.

Brian sought a contested hearing as to whether he was entitled to share custody with mother, and the court set that matter for hearing on January 7, 2013. The court further found Brian to be Jovanni's biological father, but declined to find him the presumed father.

John timely appealed.

## DISCUSSION

John asserts: (1) the juvenile court erred in denying him presumed father status and excluding him from the proceedings solely because he is not Jovanni's biological father; (2) he is entitled to presumed father status as a matter of law because he executed a voluntary declaration of paternity shortly after Jovanni's birth; and (3) DCFS did not conduct a proper ICWA inquiry.

DCFS agrees that excluding John from the proceedings merely because Brian was determined to be the biological father was error, and it does not oppose remand with directions to the juvenile court to provide John an opportunity to be recognized as Jovanni's presumed father. DCFS also agrees that a proper ICWA inquiry was not made, and it does not object to the matter being remanded to the juvenile court for DCFS to conduct such an inquiry and report its findings to the court. We consider these issues below.

### I.    John's Request for Judicial Notice

As a preliminary matter, we note that John requested, and we granted, judicial notice of the voluntary declaration of paternity he and mother executed June 5, 2012, two days after Jovanni's birth. The voluntary declaration of paternity contains the following

5

statement, which John signed under penalty of perjury: "I am the biological father of the child named on this declaration . . . . I understand that by signing this form I am consenting to the establishment of paternity, thereby waiving those rights. I am assuming all of the rights and responsibilities as the biological father of this child. I wish to be named as the father on the child's birth certificate." The voluntary declaration also contained mother's statement under penalty of perjury, as follows: "I am the unmarried natural mother of the child named on this declaration . . . . I certify that the man signing this form is the only possible father of this child. I know that by signing this form I am establishing the man signing this form as the biological father of this child with all the rights and responsibilities of a biological father under the laws of California. I consent to the establishment of paternity by signing this form." The form was witnessed on June 5, 2012, and was processed by the California Department of Child Support Services on June 19, 2012.

## II. The Juvenile Court Erred in Denying John Presumed Father Status and Excluding Him From the Proceedings Solely Because He Is Not Jovanni's Biological Father

### A. *Biological, Presumed, and Alleged Fathers*

The child dependency statutes distinguish between "biological," "presumed," and "alleged" fathers. (E.g., §§ 290.2 [notice shall be given to "[t]he father or fathers, presumed and alleged"], 291 [same], 292 [notice shall be given to "[t]he presumed father or any father receiving services], 293 [same], 361.5 [child welfare services shall be provided to "statutorily presumed father," and may also be provided to "the biological father"]; see also *In re Zacharia D*. (1993) 6 Cal.4th 435, 448.) A biological father is one "'who is related to the child by blood.'" (*In re E.T*. (2013) 217 Cal.App.4th 426, 438, citing § 361.3, subd. (c)(2).) A "presumed father" is one "'who "promptly comes forward and demonstrates a full commitment to . . . paternal responsibilities—emotional, financial, and otherwise."'" (*In re Jerry P*. [(2002)] 95 Cal.App.4th [793,] 801-802.) A natural father can be a presumed father, but is not necessarily one; and a presumed father

6

can be a natural father, but is not necessarily one. (*Id*. at p. 801.)" (*In re A.A.* (2003) 114 Cal.App.4th 771, 779.) An "alleged father" "may be the father of a dependent child. However, he has not yet been established to be the child's natural or presumed father." (*Ibid.*)

"Presumed fathers are accorded greater rights [in dependency proceedings] than are mere natural fathers. (*In re Zacharia D.*, *supra*, 6 Cal.4th at pp. 448-449.) For example, section 361.5, subdivision (a) of the Welfare and Institutions Code provides that except in circumstances not relevant here, 'whenever a child is removed from a parent's or guardian's custody, the juvenile court *shall* order the social worker to provide child welfare services to the child and the child's mother and *statutorily presumed father* or guardians. Upon a finding and declaration of paternity by the juvenile court or proof of a prior declaration of paternity by any court of competent jurisdiction, the juvenile court *may* order services for the child and the biological father, if the court determines that the services will benefit the child.' (Italics added.)" (*In re A.A.*, *supra*, 114 Cal.App.4th at pp. 779-780.) Further, "[o]nly a statutorily presumed father is entitled to appointed counsel[.]" (*In re P.A.* (2011) 198 Cal.App.4th 974, 980.)

>    B.    *Biological Paternity Is Not Dispositive of Presumed Father Status*

In *In re Nicholas H.* (2002) 28 Cal.4th 56, our Supreme Court considered whether a man who is not a child's biological father can nevertheless be a presumed father. There, Nicholas's mother met Thomas when she was pregnant; mother and Thomas never married, but they lived together with Nicholas for several years. (*Id*. at p. 60.) After mother and Thomas's relationship ended, Nicholas lived with Thomas for a period of time. Thomas "has provided Nicholas with significant financial support over the years, and he has consistently referred to and treated Nicholas as his son. 'In addition, there is undisputed evidence that Nicholas has a strong emotional bond with Thomas and that Thomas is the only father Nicholas has ever know[n].'" (*Id*. at p. 61.) Under these circumstances, the Supreme Court held that Thomas's admission that he was not Nicholas's biological father did not defeat his presumed father status. (*Id*. at p. 63.)

7

The court reached a similar result in *In re Jerry P.*, *supra*, 95 Cal.App.4th 793. There, mother and J.R. had a relationship for about a year, and Jerry was conceived during that period. (*Id.* at p. 797.) Jerry was detained shortly after his birth because he tested positive for cocaine; J.R. appeared at the section 366.26 hearing and sought presumed father status. The juvenile court ordered a paternity test, which revealed that J.R. was not Jerry's biological father. (*Id.* at p. 798.) The court thereupon entered an order that J.R. was not Jerry's presumed father and denied his motion for reunification services. (*Id.* at p. 801.)

The Court of Appeal reversed, concluding that lack of a biological relationship to a child does not necessarily defeat presumed father status. (*In re Jerry P.*, *supra*, 95 Cal.App.4th at p. 803.) It explained: "Presumed fatherhood, for purposes of dependency proceedings, denotes one who 'promptly comes forward and demonstrates a full commitment to his paternal responsibilities—emotional, financial, and otherwise[.]' As one court put it: 'The purpose of reunification services is to "reunite the family in a situation where the best interests of all concerned, the child, the parent and society as a whole, are well served."' Therefore, '[w]e doubt, in light of the statutory purpose, that the Legislature intended to mandate reunification services solely based on the status of being the biological father. For example, we think it highly unlikely the Legislature intended to give a right of reunification services to a rapist or an anonymous sperm donor simply because the man is the biological father of the child.'" (*Id.* at pp. 801-802, fn. omitted.) Further, the court said, presumed fatherhood status is not necessarily rebutted by evidence that the "presumed father" is not the "natural father" because "in the dependency context the term 'presumed father' is not an evidentiary term but a term of convenience used to identify a preferred class of fathers by reference to the familial bonds described in [Family Code] section 7611 which the Legislature has determined reasonably approximates the class of fathers it wishes to benefit." (*Id.* at p. 805, fn. omitted.)

Taken together, *Nicholas H.* and *Jerry P.* stand for the proposition that biological paternity is not determinative of presumed father status because a man may be a child's

8

*presumed* father even if he is not that child's *biological* father. The trial court erred in concluding otherwise and in dismissing John from the proceedings solely because he is not Jovanni's biological father.

### III. John Is Not Entitled to Presumed Father Status as a Matter of Law

Our conclusion that John should not have been dismissed from the proceedings merely because he is not Jovanni's biological father is not dispositive of the second question John raises on appeal—whether he is entitled to presumed father status. John urges that he is entitled to such status as a matter of law because he executed a voluntary declaration of paternity after Jovanni's birth. He urges: "Family Code, § 7570 et seq. and California Rules of Court, Rule 5.635, subdivision (c) specifically state that an executed and filed voluntary declaration of paternity acts as a judgment finding the male signatory to be the subject child's presumed father." For the following reasons, we do not agree.

#### A. *Establishment of Paternity by Voluntary Declaration*

Pursuant to Family Code section 7570, the Legislature "hereby finds and declares" that there is a "compelling state interest in establishing paternity for all children. Establishing paternity is the first step toward a child support award, which, in turn, provides children with equal rights and access to benefits, including, but not limited to, social security, health insurance, survivors' benefits, military benefits, and inheritance rights. . . . [¶] . . . A simple system allowing for establishment of voluntary paternity will result in a significant increase in the ease of establishing paternity, a significant increase in paternity establishment, an increase in the number of children who have greater access to child support and other benefits, and a significant decrease in the time and money required to establish paternity due to the removal of the need for a lengthy and expensive court process to determine and establish paternity and is in the public interest." (Subds. (a), (b).)

9

Consistent with the legislative purpose set out in Family Code section 7570, Family Code section 7571 requires hospitals to provide voluntary declarations of paternity to "the natural mother and . . . the man identified by the natural mother as the natural father." The voluntary declaration of paternity must contain, at a minimum, the names of the mother, father, and child, the child's date of birth, "[a] statement by the mother that . . . the man who has signed the voluntary declaration of paternity is the only possible father," and "[a] statement by the father that . . . he is the biological father of the child, and that he consents to the establishment of paternity by signing the voluntary declaration of paternity." (Fam. Code, § 7574, subd. (b).)

"[A] completed voluntary declaration of paternity . . . that has been filed with the Department of Child Support Services shall establish the paternity of a child and shall have the same force and effect as a judgment for paternity issued by a court of competent jurisdiction. The voluntary declaration of paternity shall be recognized as a basis for the establishment of an order for child custody, visitation, or child support." (Fam. Code, § 7573.) However, if genetic tests demonstrate that the man who signed the voluntary declaration of paternity is not "the father of the child," the court may set the declaration aside. (Fam. Code, § 7575, subd. (b)(1).)

### B. A Completed Voluntary Declaration of Paternity Is Not Dispositive of Presumed Father Status in a Dependency Proceeding

In *In re Brianna* (2013) 220 Cal.App.4th 1025, we considered whether an executed voluntary declaration of paternity entitles a man to presumed father status in a dependency proceeding.[2] We concluded that although a voluntary declaration of paternity gives rise to an evidentiary presumption that the declarant is the child's *biological father*, it does not entitle him to *presumed father* status. We began by discussing *In re E.O.* (2010) 182 Cal.App.4th 722, in which N.M. urged he was entitled to presumed father status in a dependency proceeding because a judgment entered in a

---

[2] On November 6, 2013, we invited the parties to address the effect of *In re Brianna* in supplemental letter briefs.

10

separate action had found him to be the father of the dependent children and ordered him to pay child support. N.M. noted that Family Code section 7636 provides that a "'judgment . . . of the court determining the existence . . . of the parent and child relationship is determinative for all purposes'"; thus, he contended, the paternity judgment "'required the juvenile court to consider [him] the children's presumed father.'" (*In re E.O.*, *supra*, 182 Cal.App.4th at p. 727.) The Court of Appeal disagreed, explaining as follows: "[A]ppellant's argument on this point misconstrues the nature of the prior judgment. A paternity judgment is, as the name implies, a judicial determination that a parent-child relationship exists. It is designed primarily to settle questions of biology and provides the foundation for an order that the father provide financial support. For example the judgment at issue here declared appellant to be one of E.O. and Y.O.'s 'parents' and states he had the obligation to provide them '$0.00' in monthly child support. Presumed father status, by contrast, is concerned with a different issue: whether a man has promptly come forward and demonstrated his "'full commitment to his parental responsibilities—emotional, financial, and otherwise.'" (*In re Jerry P.*, *supra*, 95 Cal.App.4th at pp. 801-802.) We would endorse 'an interpretation that would lead to absurd consequences' if we were to conclude that a paternity judgment that is focused narrowly on biological and financial issues is determinative on subsequent issues that are unrelated to and far beyond its scope. (*In re M.B.* (2009) 174 Cal.App.4th 1472, 1477.) We decline to read the applicable statutes in an absurd manner." (*In re E.O.*, *supra*, 182 Cal.App.4th at pp. 727-728.)

In *In re Brianna*, *supra*, 220 Cal.App.4th 1025, we applied the analysis of *In re E.O.* to conclude that, like a paternity judgment, a voluntary declaration of paternity is not dispositive of presumed father status. We explained as follows:

"Were we to conclude that executing a voluntary declaration of paternity automatically entitles a man to presumed father status in the dependency context, we would make precisely the error the court eschewed in *In re E.O.*, *supra*, 182 Cal.App.4th 722. Like a paternity judgment, a voluntary declaration of paternity is 'designed primarily to settle questions of biology.' (*Id.* at p. 727.) It is for this reason that a

11

voluntary declaration of paternity must include '[a] statement by the mother that . . . the man who has signed the voluntary declaration of paternity is the only possible father' and '[a] statement by the father that . . . he is the biological father of the child.' (§ 7574, subd. (b).) It is also for this reason that a court may set aside a voluntary declaration of paternity if genetic tests establish that 'the man who signed the voluntary declaration [of paternity] is not the father of the child.' (§ 7575, subd. (b)(1).) As the court noted in *In re E.O.*, we would 'endorse "an interpretation that would lead to absurd consequences" if we were to conclude that a [voluntary declaration of paternity] that is focused narrowly on biological and financial issues is determinative on subsequent issues that are unrelated to and far beyond its scope.' (182 Cal.App.4th at p. 728.) Like the *E.O.* court, we decline to read the statute in such a manner.

"Moreover, were we to conclude that a voluntary declaration of paternity entitled a man to presumed father status in a dependency action, we would elevate it above a paternity judgment, in violation of [Family Code] section 7573's mandate that a completed voluntary declaration of paternity 'shall have *the same force and effect* as a judgment for paternity issued by a court of competent jurisdiction.' (Italics added.) As we have seen, a paternity judgment does not entitle a man to presumed father status in a dependency action. (*In re E.O.*, *supra*, 182 Cal.App.4th 722; *In re Cheyenne B.* [(2012)] 203 Cal.App.4th 1361.) If a voluntary declaration of paternity were to give a man presumed father status in such an action, the voluntary declaration would not have 'the *same* force and effect' as a judgment—it would have a force and effect different than, and superior to, a judgment.

"Finally, there is no suggestion in the dependency statutes that the Legislature intended to grant preferred status in a dependency action to a man who has completed a voluntary declaration of paternity, but has not otherwise established a relationship with his child. Such a conclusion would have the effect of mandating reunification services to a biological father who, as in this case, has had virtually no contact with his child in many years and whom the child does not know as her father. There is no suggestion in

the Welfare and Institutions Code that the Legislature intended such a result." (*In re Brianna*, *supra*, 220 Cal.App.4th at pp. 1048-1049.)

>   *C.      This Matter Must Be Remanded for the Juvenile Court to Determine Whether John Should Be Granted Presumed Father Status*

*In re Brianna* is dispositive of John's contention that he is entitled to presumed father status in this proceeding as a matter of law. As we have said, *In re Brianna* holds that a voluntary declaration of paternity does not entitle a man to presumed father status in a dependency proceeding. The juvenile court did not err in so concluding.

Our conclusion that John is not Jovanni's presumed father as a matter of law is not, however, dispositive of his status in this proceeding. Because the juvenile court believed the DNA tests were determinative of John's right to participate in this action, it appears not to have determined whether John fulfills the statutory criteria that give rise to a presumption of paternity pursuant to Family Code section 7611, subdivision (d)—i.e., he has "receive[d] the child into his home and openly [held] out the child as his natural child." The juvenile court must make this determination on remand.[3]

If the court determines that John alone fulfills the statutory criteria, it shall declare him the presumed father. If the court determines that *both* John and Brian fulfill the statutory criteria, it shall resolve their competing claims pursuant to Family Code section 7612 (addressing conflicting presumptions of paternity). And, should the court determine

---

[3]      If it has not already done so, the juvenile court also may need to determine whether Brian fulfills the statutory criteria of Family Code section 7611, subdivision (d).

In his supplemental letter brief, John urges that he must be designated the presumed father because "he is the only individual who so qualifies." We cannot agree, as the juvenile court has not yet addressed presumed father status. In any event, none of the three cases John cites supports the proposition that "[a] juvenile court's refusal to designate a man as a child's presumed father when he is the only individual who so qualifies is prohibited." Instead, these cases hold that where a presumption of paternity *has arisen*, it should not be rebutted under Family Code section 7612, subdivision (a), where the result would be to leave a child with fewer than two parents. (See In re *Jesusa V.* (2004) 32 Cal.4th 588, 615; *In re J.O.* (2009) 178 Cal.App.4th 139, 148; *Librers v. Black* (2005) 129 Cal.App.4th 114, 122-123.)

that *neither* man fulfills the statutory criteria, it shall determine whether either is nonetheless entitled to reunification services pursuant to the Welfare and Institutions Code.

Further, on remand the juvenile court shall determine whether John's voluntary declaration of paternity shall be set aside pursuant to Family Code section 7575. As noted above, a completed voluntary declaration of paternity filed with the Department of Child Support Services establishes the paternity of a child and has the same force and effect as a paternity judgment. (Fam. Code, § 7573.) However, if the court finds "that the conclusions of all of the experts based upon the results of the genetic tests performed pursuant to Chapter 2 (commencing with Section 7550) are that the man who signed the voluntary declaration is not the father of the child, the court may set aside the voluntary declaration of paternity unless the court determines that denial of the action to set aside the voluntary declaration of paternity is in the best interest of the child, after consideration of all of the following factors: [¶] (A) The age of the child. [¶] (B) The length of time since the execution of the voluntary declaration of paternity by the man who signed the voluntary declaration. [¶] (C) The nature, duration, and quality of any relationship between the man who signed the voluntary declaration and the child, including the duration and frequency of any time periods during which the child and the man who signed the voluntary declaration resided in the same household or enjoyed a parent-child relationship. [¶] (D) The request of the man who signed the voluntary declaration that the parent-child relationship continue. [¶] (E) Notice by the biological father of the child that he does not oppose preservation of the relationship between the man who signed the voluntary declaration and the child. [¶] (F) The benefit or detriment to the child in establishing the biological parentage of the child. [¶] (G) Whether the conduct of the man who signed the voluntary declaration has impaired the ability to ascertain the identity of, or get support from, the biological father. [¶] (H) Additional factors deemed by the court to be relevant to its determination of the best interest of the child." (§ 7575, subd. (b).)

14

In the present case, the juvenile court ordered genetic tests and made a finding that Brian is Jovanni's biological father, but it did not expressly set aside John's voluntary declaration of paternity. On remand, the juvenile court shall consider, pursuant to Family Code section 7575, whether setting aside the voluntary declaration of paternity is appropriate under the facts of this case.

## IV.    The Minute Order Erroneously States That ICWA Notice Was Not Required

At the commencement of the case, mother was asked about possible Indian heritage and said she might have Vergo Indian ancestry. On the parental notification of Indian status, filed August 17, 2012, mother said she might have Indian ancestry, but did not know to what tribe she might belong. The same day, the court said any Indian heritage appeared "very remote," but it ordered DCFS to interview mother. The minute order does not accurately reflect this order to interview mother; instead, it states: "Court finds no reasons to believe ICWA applies to this case."

Because the juvenile court never made an ICWA finding, we remand the matter for DCFS to conduct an appropriate inquiry and report its findings to the court. At that time, the juvenile court shall either find that ICWA does not apply or order DCFS to provide the appropriate ICWA notice.

15

## DISPOSITION

The matter is reversed and remanded for additional findings and orders consistent with the views expressed herein.

**CERTIFIED FOR PUBLICATION**


                                        SUZUKAWA, J.

We concur:


EPSTEIN, P. J.


MANELLA, J.