Filed 12/7/15  In re Jovanni B. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Jovanni B., a Person Coming Under the Juvenile Court Law. | B260681 |
| | (Los Angeles County Super. Ct. No. CK92293) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| JOHN B., | |
| Defendant and Appellant, | [NO CHANGE IN JUDGMENT] |

THE COURT*

It is ordered that the opinion filed on November 9, 2015, be modified to add a new paragraph at page 9, line 6, before the Disposition:

> Defendant contends the juvenile court did not have the authority to rescind the declaration of paternity under section 7575, subdivision (b)(3)(B), which provides:  "The local child support agency's authority under this subdivision is limited to those circumstances where there is a conflict between a voluntary

acknowledgment of paternity and a judgment of paternity or a conflict between two or more voluntary acknowledgments of paternity." We disagree. This limitation of authority applies only to *local child support agencies*, and because the Department is *not* a local child support agency, the limitation in subdivision (b)(3)(B) does not apply to the Department. (See § 17304, which directs each county to establish a new county department of child support services, which is to be separate and independent from any other county department.) The Department is authorized to request that a fraudulent declaration of paternity be set aside under subdivision (b)(1) of section 7575, and the juvenile court is authorized to act on that request. Subdivision (b)(3)(B) has no bearing on this case.

The petition for rehearing is denied. There is no change in judgment.

_____

*EPSTEIN, P. J.         MANELLA, J.         COLLINS, J.

Filed 11/9/15  In re Jovanni B. CA2/4 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Jovanni B., a Person Coming Under the Juvenile Court Law. | B260681 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHN B.,<br><br>    Defendant and Appellant, | (Los Angeles County Super. Ct. No. CK92293) |

APPEAL from an order of the Superior Court of Los Angeles County, Teresa T. Sullivan, Judge.  Affirmed.

Andrea R. St. Julian, under appointment by the Court of Appeal, for Appellant.

Richard D. Weiss, Chief Deputy County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Respondent.

_____

In this dependency case, John B. appeals the juvenile court's order setting aside his voluntary declaration of paternity and denying his claim of presumed father status of the dependent minor, Jovanni B. For the reasons discussed below, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Jovanni was born in June 2012. For two months after his birth, he and his mother, Andrea F., lived with John.

On June 5, 2012, the Los Angeles County Department of Children and Family Services (Department) received a hotline referral that mother had undergone a psychiatric evaluation that day. Because mother was nursing Jovanni, then only two days old, she was not taking her psychotropic medications for bipolar disorder, schizophrenia, and attention deficit hyperactivity disorder. Without medications, mother was susceptible to "panic attacks, blacking out and seizing." A social worker went to see mother at the hospital that same day. Mother and John, who also was present during the social worker's visit, agreed to a voluntary family maintenance case plan. Mother and John both signed a voluntary declaration of paternity, which named John as the biological father of Jovanni. John told the social worker that mother was already pregnant with Jovanni when they met, but that this admission was "off the record."

On August 11, 2012, John attacked mother with his fists and a machete; she suffered a cut on her arm. John was arrested and convicted of a felony, for which he remained incarcerated until November 1, 2014. John had no contact with Jovanni during his incarceration.

As a result of the machete incident, the Department filed a dependency petition on behalf of Jovanni, alleging that mother and John had a history of domestic violence, that John had threatened to kill mother and had struck her with his fists and a machete, and that John had a history of substance and alcohol abuse. (Welf. & Inst. Code, § 300, subds. (a) & (b).) John was interviewed in jail by a social worker. John told the social worker that he agreed to Jovanni's detention, and "if you guys (DCFS) want me out of Jovanni's life, I am willing to do that."

2

On September 17, 2012, the juvenile court entered a temporary restraining order against John, ordered him to take a DNA test, and stated that it would not find John to be the father of Jovanni unless there was a biological connection.

At the adjudication hearing on November 27, 2012, the juvenile court dismissed John from the proceedings after a paternity test showed that he was not Jovanni's biological father. The court was informed that according to genetic testing, another man, Brian H., was the biological father. The court dismissed counts a and b-2 of the petition. It sustained an amended count b-1, which stated: "On or about 8/11/2012, John [B.] attacked Andrea [F.], the mother of the minor Jovanni [B.], with a machete. He also hit the mother in her face and body with his fists. The attack took place in the minor's presence. Mr. [B.] was intoxicated at the time of the attack and the mother was aware that Mr. [B.] was often volatile when drinking. Further, the mother has a history of being victimized by domestic violence. This attack against the mother along with the mother's failure to protect the minor, placed the minor at substantial risk of serious physical harm."

John appealed from the order dismissing him from the proceedings. (*In re Jovanni B.* (2013) 221 Cal.App.4th 1482 (*Jovanni I*).) He argued that genetic test results are not dispositive of his right to participate in the proceedings, and that he is entitled to presumed father status as a matter of law based on his voluntary declaration of paternity. We agreed with the first argument, but disagreed with the second. We remanded "for the juvenile court to consider whether, in view of the DNA test results, setting aside John's voluntary declaration of paternity is appropriate under the facts of this case (Fam. Code, § 7575), [and] whether John is entitled to presumed father status (Fam. Code, § 7611, subd. (d))."[1] (*Jovanni I*, 221 Cal.App.4th at p. 1485.)

After the case was remanded, John sent a letter to the juvenile court requesting that counsel be appointed to represent him at the hearing on remand. His request for appointed counsel was granted, and the matter was continued.

_____

[1] All further undesignated statutory references are to the Family Code.

3

In May 2013, the Department filed a supplemental petition seeking to remove Jovanni from mother's care. (Welf. & Inst. Code, § 387) By then, in violation of the juvenile court's orders, mother had ceased all contact with the Department, and had disappeared with Jovanni, whose whereabouts were unknown to the Department or his biological father Brian. At the detention hearing on the supplemental petition, the court ordered that Jovanni be detained, and issued a protective custody warrant for Jovanni and an arrest warrant for mother. At the adjudication hearing in August 2013, mother and Jovanni were still missing, and the court sustained the supplemental petition.

Mother and Jovanni were located in Las Vegas in March 2014. Jovanni was returned to the Department and placed in shelter care. Mother remained in Las Vegas. After Jovanni returned to Los Angeles, Brian visited him twice, before losing contact with the Department.

In September 2014, the Department informed the juvenile court that mother was still in Las Vegas, and that neither mother nor Brian had been in regular contact with Jovanni, who remained in shelter care. The Department recommended that mother's family reunification services be terminated, and that Jovanni's caregiver be granted educational authority so that he could receive Regional Center services for developmental delays. John, who was in prison, was represented by appointed counsel at that hearing.

In October 2014, through his attorney, John filed a request for presumed father status. The Department opposed the request, and sought to have John's declaration of paternity set aside. The Department urged the court to strike the voluntary declaration on the ground of extrinsic fraud, given that John admitted to the social worker that he knew he was not the child's biological father when he signed the declaration. The Department argued that the best interest exception for preserving a fraudulent declaration of paternity was inapplicable, given that Jovanni was over two years old and had had no contact with John since he was two months old. (§ 7575, subd. (b)(1)(F).) The Department also pointed out that Jovanni was declared a dependent child due to John's violent acts toward mother. Because John was incarcerated and had no contact with the child since the August 2012 incident, he has no parent-child relationship with Jovanni, who does not

4

know him to be his father.  Arguing that under these circumstances it would be in the best interest of the child to sever the relationship created by a fraudulent document, the Department sought to have the case proceed to permanency planning, and to sever John's remote and minimal ties to the child.

Jovanni and Brian also opposed John's request for presumed father status.

After a contested hearing, the court granted the Department's request to set aside John's declaration of paternity, denied John's request for presumed father status, and set the matter for a permanency planning hearing.  The court's finding that it was not in Jovanni's best interest to maintain his relationship with John was based on its findings that:  Jovanni, who is over two years old, has had no contact with John since the age of two months; during the entire reunification period, John has been incarcerated for attacking mother with a machete while intoxicated; Jovanni's biological father, Brian, has been identified through genetic testing; and John fraudulently signed the declaration of paternity, knowing that mother already was pregnant when they met.

John timely appealed the order denying his request for presumed father status and setting aside his voluntary declaration of paternity.


**DISCUSSION**

John argues the juvenile court erred in finding he is not the presumed father under section 7611, subdivision (d).  We disagree.

Sections 7600 et seq. provide a rebuttable presumption of paternity.  In relevant part, subdivision (d) of section 7611 provides a rebuttable presumption of paternity if a man receives the child into his home and openly holds the child out as his natural child.  However, these two factors are not in themselves sufficient to establish a man's presumed father status in a dependency case; the alleged father's conduct also must demonstrate his commitment to the child as a parent.  (*E.C. v. J.V.* (2012) 202 Cal.App.4th 1076, 1087; *In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1653–1654.)

John contends that where only one man qualifies as a presumed father under subdivision (d) of section 7611, the presumption is conclusive, and that because he is the

5

only man who meets the statutory criteria, he is entitled to presumed father status as a matter of law.

John relies on *In re Jesusa V.* (2004) 32 Cal.4th 588 (*Jesusa V.*). That case does not support his assertion that where there is only one potential presumed father, the juvenile court lacks discretion to deny the lone applicant's claim.[2] In *Jesusa V.*, the Court reaffirmed its holding in *In re Nicholas H.* (2002) 28 Cal.4th 56, 70 (*Nicholas H.*), that where two men qualify as presumed fathers, biology is not the sole determinative factor. (*Jesusa V.* at p. 604; *Librers v. Black* (2005) 129 Cal.App.4th 114, 123.) "The clear import of *Nicholas H.* and *Jesusa V.* is that *whenever possible*, a child should have the benefit of *two* parents to support and nurture him or her." (*Librers* at p. 123, italics added.) Both *Nicholas H.* and *Jesusa V.* recognized that the juvenile court must exercise discretion in making that determination.

In dependency cases, the purpose of section 7611 is not to establish paternity, but "to determine whether the alleged father has demonstrated a sufficient commitment to his parental responsibilities to be afforded rights not afforded to natural fathers—the rights to reunification services and custody of the child. Therefore, in dependency proceedings the term 'presumed father' does not denote a presumption of fatherhood in the evidentiary sense and presumed father status is not rebutted by evidence that someone else is the natural father." (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 804.) "[W]hether a particular dependency case is an appropriate action in which to find that such a presumption is rebutted under subdivision (a) of section 7612 is a matter for the trial court's sound

---

[2] *Jesusa V.* involved two men, Heriberto and Paul, each of whom had taken the dependent child into his home and held her out as his own. (*Jesusa V.*, *supra*, 32 Cal.4th at pp. 588, 603.) As there can be only one presumed father, the issue for the juvenile court was whether the "weightier interest" favored Heriberto, the child's biological father, or "Paul, who had been married to [the child's] mother at the time [child] was conceived and born." (*Id.* at p. 598.) The juvenile court found Paul to be the child's presumed father, because unlike Heriberto, Paul had developed a bond with the child, and had lived with her for a significant portion of her young life. (*Ibid.*) The Supreme Court affirmed, concluding there was no abuse of discretion. (*Id.* at p. 607.)

6

discretion." (*In re A.A.* (2003) 114 Cal.App.4th 771, 781, citing *Nicholas H.*, *supra*, 28 Cal.4th at pp. 58–59, 70.)

In the dependency context, a presumed father has greater rights than a biological father, and "only a presumed father is entitled to custody or a reunification plan. [Citations.]" (*In re J.O.* (2009) 178 Cal.App.4th 139, 146.) The presumption of paternity is not based on biological paternity, because the state's fundamental interest is to preserve the welfare of the child, the child's best interests, and the integrity of the family. (*Jesusa V.*, *supra*, 32 Cal.4th at p. 615; *Nicholas H.*, *supra*, 28 Cal.4th at p. 65; *In re Salvador M.* (2003) 111 Cal.App.4th 1353, 1357–1358.)

The goal of reunification services is to reunite a family in the manner that serves the best interests of the child, the parents, and society as a whole. (*In re Sarah C.* (1992) 8 Cal.App.4th 964, 973 (*Sarah C.*).) A man earns presumed father status by demonstrating "a commitment toward developing a 'substantial familial relationship to the child.'" (*In re Spencer W.*, *supra*, 48 Cal.App.4th at pp. 1654–1655.) In reviewing the denial of presumed father status, "we review the facts most favorably to the judgment, drawing all reasonable inferences and resolving all conflicts in favor of the order. [Citation.] We do not reweigh the evidence but instead examine the whole record to determine whether a reasonable trier of fact could have found for the respondent. [Citation.]" (*Id.* at p. 1650; see *In re T.R.* (2005) 132 Cal.App.4th 1202, 1211 [presumed father status properly denied to registered sex offender who was sexually molesting the child].)

Here, the denial of presumed father status is supported by substantial evidence. The evidence supports the finding that John's only interactions with Jovanni occurred during the first two months of infancy, and ended abruptly when John struck mother with a machete and threatened to kill her. As a result of this violent crime, which was antithetical to the role of a devoted parent, John was incarcerated and had no further contact with Jovanni.

Under these circumstances, the contention that the juvenile court erred in failing to consider John's right to reunification services is unavailing. John relies on our previous

7

statement that if neither he nor the child's biological father, Brian, is granted presumed father status, the trial court must "determine whether either is nonetheless entitled to reunification services . . . ." (*Jovanni I*, *supra*, 221 Cal.App.4th at p. 1494.) In light of the events that occurred after the matter was remanded, there can be no prejudice to John. During the statutory reunification period,[3] John was incarcerated and had no contact with Jovanni, who is now over three years old. They have become strangers to each other through no fault of the Department or the juvenile court. (See *In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1124 [because the alleged father was in prison throughout the statutory reunification period, his incarceration made reunification all but impossible].)

At this point, the initial interest in family preservation is no longer the focus of the case. As time passes, the child's needs for permanency and stability assume an increasingly important role. The child's growing need for permanency and stability "'will often dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child.' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) We conclude the trial court did not abuse its discretion in proceeding to the next phase of permanency planning.

John argues the juvenile court erred in setting aside his declaration of paternity as fraudulent. In this case, John not only acknowledged his lack of paternity before signing the declaration, but court-ordered genetic testing showed that he is not the child's biological father. "'[A] court may set a declaration aside when court-ordered blood tests [citation] establish that the declarant is not the child's father.' [Citation.]" (*Kevin Q. v. Lauren W.*(2009) 174 Cal.App.4th 1557, 1569; § 7575, subd. (b).) In making that determination, there are numerous factors—including the age of the child, the length of time since the voluntary declaration of paternity was signed, the benefit or detriment to the child in establishing biological parentage, and whether the conduct of the man who

---

[3] For a child under age three, the statutory reunification period ranges from 120 days to six months, with a maximum of 12 months. (Welf. & Inst. Code, § 366.21, subd. (e).)

signed the declaration impaired the ability to identify the biological father—that are within the province of the juvenile court to decide. (§ 7575, subds. (b)(1)(A), (B), (F), (G); see Evid. Code, § 780, subd. (k) [admission of untruthfulness may be considered in determining credibility].) For these reasons, we conclude the juvenile court's decision to rescind the declaration as fraudulent is supported by substantial evidence.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


MANELLA, J.


COLLINS, J.

9