Filed 5/15/23  In re C.A. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re C.A., et al., Persons Coming Under the Juvenile Court Law. | B323951 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP06341E, F) |
| Plaintiff and Respondent, | |
| v. | |
| GABRIEL P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nancy Ramirez, Judge.  Reversed with directions.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Principal Deputy County Counsel for Plaintiff and Respondent.

———————————————

Gabriel P. (father) appeals from an order terminating his reunification services as to his two children. Father raises two contentions on appeal. First, the juvenile court erred in finding that the Los Angeles County Department of Children and Family Services (DCFS) provided reasonable reunification services to him. Second, DCFS conducted an inadequate inquiry into the children's Indian ancestry, under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law. Because we find that DCFS failed to provide reasonable reunification services to father, we reverse the order.

## BACKGROUND

I.    The petitions and adjudication

The family consists of mother, father, C.A. (born September 2020), and K.P. (born September 2021). Mother and father were never married. Father is C.A.'s alleged father and K.P.'s presumed father.

Mother and father's history of domestic violence brought the family to DCFS's attention. That history included an incident in November 2020 during which father assaulted mother and brandished a pocketknife at her while she was holding C.A. Father was arrested as a result of that incident.

2

In December 2020, DCFS filed a petition as to C.A. under Welfare and Institutions Code[1] section 300 alleging that the parents' domestic violence placed C.A. at risk of serious physical harm, damage, and danger (§ 300, subd. (a); count a-1) and mother failed to protect C.A. from father's violence (§ 300, subd. (b); count b-1).[2] At the detention hearing, the court noted that father and mother were living together when C.A. was born and father was present for C.A.'s birth, but he had not signed the birth certificate. The court thus said that father would likely qualify as a presumed father but nonetheless deferred paternity findings. The court detained C.A. from father and mother, ordered monitored visits with father, and released C.A. to home of mother.[3]

When K.P. was thereafter born in September 2021, DCFS filed a separate petition as to him and an amended petition as to C.A. Both petitions were based on mother and father's history of domestic violence and alleged a new incident occurring in May 2021 during which father held an ice pick to mother's stomach while she was holding C.A. and was pregnant with K.P. The juvenile court later sustained allegations in those petitions against father and mother.

The juvenile court held the adjudication hearing on October 15, 2021. The juvenile court found that father was K.P.'s

---

[1]    All further undesignated statutory references are to the Welfare and Institutions Code.

[2]    Mother's four older children were also subjects of the petition, but they are not subjects of this appeal.

[3]    Both children were later removed from mother's home.

3

presumed father, ordered reunification services for mother and father, and ordered monitored visits for father.  Father was ordered to submit to weekly drug tests, to take a 52-week domestic violence program, and to take anger management and parenting classes.  The six-month review hearing was scheduled for April 19, 2022, but continued to June 2, 2022.

II.     History of contact between DCFS and father

Throughout the proceedings, father was generally unresponsive to social workers.  Early in the proceedings and before reunification services had been ordered, father did not respond to phone calls.  On February 16, 2021, for example, a social worker left a voicemail for father and emailed him instructions about DNA testing, but father did not respond to the voicemail and the email message was "undeliverable."  Father did not respond to another email sent on February 23, 2021.  However, mother told the social worker that father was incarcerated.  According to an inmate locator search, father was released on March 5, 2021, and the social worker unsuccessfully tried to call father at phone numbers paternal grandmother had provided.  Then, on March 23, 2021, paternal grandmother reported that father was serving a three-month sentence.

On June 16, 2021, father did not answer another call from the social worker.  In August 2021, father called the social worker from a number different than ones he had previously provided and asked for information about DNA testing.  When the social worker asked about father's programs, he said he would let her know.  A social worker visited father at paternal grandmother's house on October 5, 2021.  Father said he wanted to visit C.A., but he did not want to pursue DNA testing to establish that he was C.A.'s biological father because he did not have

4

identification.  Father also agreed to random drug tests, and although the social worker said she would send instructions to his cell phone, it is unclear if she did so.

During most of the reunification period, which began on October 15, 2021, social workers had no contact with father.  On February 18, 2022, mother told a social worker that father was incarcerated, but she did not know his release date.  On March 29, 2022, mother told the social worker that father had been transferred from federal prison to a jail in downtown Los Angeles.

On April 13, 2022, just before the six-month reunification period was to end, the social worker called the jail facility where father was incarcerated to ask if he had been able to take classes there, but the social worker was told to call another day.  The social worker called back the next two days but was unable to speak to anyone at the facility because the phone was disconnected between call transfers and the person in charge was unavailable to provide information.  The social worker left messages for father on a number that had been provided in January and February 2022 but the calls were not returned.  The social worker learned that father had been released from jail on April 21, 2022.  But father did not respond to calls the social worker made to him on April 29 and May 4, 2022.

III.    Termination of reunification services

The section 322.21, subdivision (e), review hearing was continued from April 19 to June 1 and 2, 2022.  At the hearing, father asked the court to find that DCFS had not provided reasonable services, pointing out that, per the title XX's, the social worker had contact with father on October 5, 2021, and

then provided no further services until April 2022, when the social worker made a few phone calls.

Over father's objection, the court terminated father's reunification services but continued mother's services. In terminating father's services, the court said it relied on the history of the case, DCFS's efforts to reach out to father, and father's failure to follow up with DCFS. The court also noted that father had been in and out of facilities, had not visited the children, and had made no efforts to communicate with DCFS.

Because mother's reunification services were not terminated, a section 366.26 hearing was not scheduled.

IV.    ICWA

Throughout the proceedings, mother and father consistently denied Indian ancestry. The court found C.A. and K.P. were not Indian children.

**DISCUSSION**

I.    Reunification services

Father's primary contention is that DCFS did not provide reasonable reunification services to him, and therefore the juvenile court erred by terminating services. As we now explain, we agree.

Subject to exceptions not relevant here, the court is required to provide reunification services whenever a child is removed from parental custody. (§ 361.5, subd. (a).) The purpose of such services is to eliminate the conditions leading to loss of custody and to facilitate parent-child reunification, thus furthering the goal of preserving families, whenever possible. (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478.)

6

Where, as here, the case involves children under the age of three when removed from parental custody, reunification services are presumptively limited to six months and generally shall not exceed 12 months.  (§ 361.5, subd. (a)(1)(B).)  If the child cannot be safely returned home, the court shall terminate the parent's reunification services and set a hearing to terminate parental rights unless the court finds either that the child is likely to be returned home by the 18-month hearing, or that "reasonable services have not been provided to the parent."  (§ 366.21, subd. (g)(1).)  A reasonable services finding shall be made by clear and convincing evidence.  (§ 366.21, subd. (g)(4).)

We review a reasonable services finding for substantial evidence based on that clear and convincing standard.  (*In re M.F.* (2019) 32 Cal.App.5th 1, 14, disapproved on another ground by *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 631, fn. 8.)  In determining whether substantial evidence supports the court's reasonable services finding, we review the record in the light most favorable to the finding and draw all reasonable inferences from the evidence to support it.  (*M.F.* at p. 14.)  We do not reweigh the evidence or exercise independent judgment, and the burden is on the appellant to show that the evidence is insufficient to support the court's findings.  (*Ibid.*)

To support a finding that reasonable services were offered or provided, the record should show that DCFS identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parent during the reunification period, and made reasonable efforts to assist the parent in areas where compliance proved difficult.  (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 691.)  The standard whether services were reasonable considers

the circumstances at issue and not those existing in an ideal world. (*Id.* at p. 692.)

Moreover, a parent's incarceration does not disqualify that parent from receiving services. (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1011–1012.) Exerting reasonable efforts for an incarcerated parent includes maintaining reasonable contact with the parent, assisting the parent with accessing services by determining the availability of services at the institution, notifying the institution that the incarcerated parent needs reunification services, and exploring whether housing changes are possible to facilitate provision of services. (*Id.* at pp. 1012–1013.)

Here, the court ordered father to have reunification services beginning October 15, 2021, so the six-month reunification period ran until April 15, 2022, although the review hearing was not held until June 1 and 2, 2022. From October 15, 2021 until April 15, 2022, the record shows that DCFS made just three attempts to contact father, on April 13, 14, and 15, 2022. Those attempts occurred within a week of the originally scheduled six-month review hearing and therefore were belated at best. Otherwise, the record does not show that DCFS provided any services to father or tried to connect him with any programs. These efforts were untimely and unreasonable. (See, e.g., *T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1242–1248 [delay in providing services was unreasonable], disapproved on another ground by *Michael G. v. Superior Court, supra*, 14 Cal.5th at p. 631, fn. 8.)

DCFS concedes that these efforts were "not ideal" and "late to start." Nonetheless, DCFS argues that they were reasonable when placed in historical context. DCFS thus asserts that the

social worker made more than just three attempts in April 2022 to contact father, stating that a social worker also left voice messages for father in January and February 2022 to which he never responded. The record does not support that assertion. Instead, the record shows that the social worker left messages for father *in April 2022* at a number "which was provided to [DCFS] in late January and mid February of 2022." Thus, DCFS had contact information for father in January and February 2022 but did not use it until months later.

DCFS also argues that it made additional efforts to provide services to father *after* April 15, 2022, and before the continued review hearing in June 2022. Those efforts consisted of two phone calls, one on April 29 and the second on May 4, 2022. Those phone calls also were untimely and, even assuming that the social worker had been able to contact father, he could not have been provided services in a timely fashion.

DCFS also points out that father was in and out of custody during the reunification period and failed to keep it advised of his address. However, incarcerated parents are entitled to reunification services in the absence of a finding of detriment to the children. (See generally § 361.5, subd. (e)(1).) DCFS cannot simply conclude that "father is in prison; he knows what the requirements of his case plan are; he was imprisoned before any referrals were made; he says no services are available to him; and being unaware of any resources to assist the incarcerated parent with reunification, [DCFS] need not take any action to facilitate the reunification process." (*Mark N. v. Superior Court*, *supra*, 60 Cal.App.4th at p. 1013.)

Also, the record shows that DCFS knew where father was incarcerated. On February 18, 2022, mother told DCFS that

9

father was in federal prison. She then told DCFS, on March 29, 2022, that father had been transferred from federal prison to a downtown jail. Therefore, DCFS was aware of father's whereabouts but apparently did nothing with that information. In any event, DCFS has resources to locate incarcerated parents; yet, the record does not show that it availed itself of them in a timely manner.

To be sure, the entirety of the record, including events preceding the reunification period, suggests that father did not respond to DCFS's minimal efforts to contact him. Even so, we cannot agree with DCFS's characterization of father's behavior as deliberately evasive. Rather, it is unclear whether father had a reliable phone number. And while father can certainly be faulted for failing to remain out of custody, his incarceration can hardly be characterized as a deliberate attempt to avoid DCFS. Indeed, father told a social worker in October 2021 that he wanted to see C.A. and would drug test. The record therefore does not show he was unamenable to receiving services or refused services outright. (See, e.g., *In re K.C.* (2012) 212 Cal.App.4th 323, 330 [father never placed in position where refusal possible because services were never offered]; see *In re T.J. v. Superior Court*, *supra*, 21 Cal.App.5th at pp. 1240–1241 [social worker's doubt about outcome of services does not excuse failure to provide them].) Indeed, DCFS did not try to help father obtain services, much less maintain reasonable contact with him during the service plan. (See generally *Kevin R. v. Superior Court*, *supra*, 191 Cal.App.4th at p. 691.)

II. Alleged father status

DCFS next argues that any failure on its part to provide father with reasonable reunification services is of no moment

10

because he was only C.A.'s alleged father and, as such, not entitled to reunification services. Therefore, DCFS asserts that the order should be affirmed as to C.A.

A father's rights and the extent to which he may participate in dependency proceedings depend on his status as a biological, alleged or presumed father. (*In re H.R.* (2016) 245 Cal.App.4th 1277, 1283.) A presumed father ranks highest, as he has received the child into his home and openly held out the child as his natural child, thereby demonstrating a full commitment to parental responsibilities, emotional, financial, and otherwise. (*Ibid.*; *In re Jovanni B.* (2013) 221 Cal.App.4th 1482, 1488.) In contrast, a biological father has established paternity but has not established presumed father status. (*In re H.R.*, at p. 1283.) An alleged father may be the child's father but has not established biological paternity. (*Ibid.*) Only presumed fathers are entitled to appointed counsel and, absent a detriment finding, reunification services. (*Ibid.*)

Although Gabriel P. was only C.A.'s alleged father, the court treated him as a biological or presumed father by ordering reunification services be provided to him. The court also said at the detention hearing that because father lived with mother when C.A. was born and was at her birth, father likely would qualify as a presumed father. Under these circumstances, and because we are reversing termination of reunification services as to K.P., we reverse the order as to C.A. as well.

III.   ICWA

Father also contends that DCFS did not comply with its duty of initial inquiry under ICWA and related state law because it did not ask extended family members about the children's possible Indian ancestry. However, after this appeal was filed,

11

the juvenile court, on February 14, 2023, ordered DCFS to interview or attempt to interview extended family members about whether the children may be Indian children, to document those efforts, and to submit a report about the results to the juvenile court.[4] This order accordingly renders father's appeal as to the ICWA findings moot.[5] (See generally *In re D.P.* (2023) 14 Cal.5th 266.)

---

[4] We grant DCFS's request for judicial notice of the February 14, 2023 minute order. (Evid. Code, § 452.)

[5] Because the appeal as to this issue is moot, we deny DCFS's partial motion to dismiss the appeal.

## DISPOSITION

The order terminating Gabriel P.'s reunification services is reversed with directions to reinstate services.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

BENKE, J.*

_____

\* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.