Filed 8/17/20  In re Jadyn A. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JADYN A., a Person Coming Under the Juvenile Court Law. | B299816, B302803<br><br>(Los Angeles County Super. Ct. No. 18CCJP01372A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY A.,<br><br>Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, D. Brett Bianco, Judge.  Affirmed in No. B299816. Dismissed in No. B302803.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant Anthony A. in Nos. B299816 and B302803.

Emery El Habiby, under appointment by the Court of Appeal, for Respondent minor Jadyn A. in No. B299816.

No appearance for Plaintiff and Respondent Los Angeles County Department of Children and Family Services in Nos. B299816 and B302803.

_____

Anthony A. appeals the juvenile court's July 26, 2019 order denying his petition to change his parental status from alleged to presumed father of now-12-year-old Jadyn A. (Welf. & Inst. Code, § 388;[1] case No. B299816) and the court's December 2, 2019 order terminating his parental rights (§ 366.26; case No. B302803).  We affirm the court's order denying his section 388 petition and, pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835, dismiss his appeal of the court's order terminating parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Dependency Petition, Detention Hearing and Combined Jurisdiction and Disposition Hearing*

On March 1, 2018 the Los Angeles County Department of Children and Family Services (Department) filed a petition pursuant to section 300, subdivision (b), on behalf of Jadyn, alleging his mother had a history of substance abuse, including methamphetamine and acid; was a current abuser of marijuana and alcohol; and had created a detrimental home environment endangering the child.  The petition identified Anthony A. as Jadyn's alleged father.

According to the March 1, 2018 detention report, the Department placed Jadyn in the home of his maternal

_____

[1]    Statutory references are to this code unless otherwise stated.

grandparents, where he and his mother had been living. Jadyn's mother had been asked to move out after using drugs in Jadyn's presence and engaging in other troubling behavior. Jadyn's mother told the Department Jadyn's father had not been a part of Jadyn's life for a long time, and she did not know where the father lived and did not have a telephone number for him. Jadyn's counsel at the detention hearing stated, "Just for the record, your honor, I know that the Department will be getting copies of the birth certificates, but according to the grandparents, [Anthony] is on the birth certificate."

At the combined jurisdiction and disposition hearing on April 17, 2018 the juvenile court sustained the Department's petition; found Anthony to be Jadyn's alleged father only; removed Jadyn from parental custody; ordered family reunification services and monitored visitation for Jadyn's mother; and, pursuant to section 361.5, subdivision (a),[2] provided no reunification services to Anthony.[3] Anthony did not appear at the April 17, 2018 hearing even though he had been served with notice of the proceeding, which attached a copy of the petition

---

[2] Subject to exceptions, section 361.5, subdivision (a), provides, "[W]henever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians. . . . [T]he juvenile court may order services for the child and the biological father, if the court determines that the services will benefit the child."

[3] The appellate record included the April 17, 2018 minute order but not the reporter's transcript of the April 17, 2018 hearing, which was not designated by Anthony for inclusion in either of his appeals.

and stated the court at the hearing may determine whether the petition's allegations are true, and the Department had received signed certified mail return receipts for notices sent to him.

### 2. *The Six-month Review*

With its status review report for the six-month review hearing (§ 366.21, subd. (e)) filed October 1, 2018, the Department included a multidisciplinary assessment team summary of findings report (MAT report). The MAT report stated that Jadyn's father was not involved in Jadyn's life and that Jadyn's maternal grandparents "ha[d] been there for Jadyn" since his birth; were both gainfully employed; were working together to ensure Jadyn's needs were being met; and were able to meet Jadyn's mental, emotional, physical and overall needs.

Anthony did not appear at the October 22, 2018 six-month review hearing despite having been served with notice of the proceeding. At the hearing the juvenile court found Jadyn's mother's progress in alleviating the causes of placement to be partial, Jadyn's return to physical parental custody would create a substantial risk of detriment to the child and continued jurisdiction was necessary. The court continued reunification services for Jadyn's mother and set a 12-month review hearing for April 15, 2019.

### 3. *Anthony's Form JV-505 Statement Regarding Parentage and the 12-month Review Hearing*

As set forth in a status review report for the 12-month review hearing (§ 366.21, subd. (f)) filed on March 22, 2019, Jadyn's maternal grandparents told the Department numerous times they were willing to provide Jadyn a permanent home. His maternal grandmother also stated Jadyn had resided in his current home (with his maternal grandparents) all his life. At

4

the hearing on April 15, 2019 Anthony appeared, and an attorney made a special appearance on his behalf. The court set a contested 12-month review hearing for April 23, 2019.

On April 23, 2019 Anthony filed a Judicial Council form JV-505 statement regarding parentage. Among other matters Anthony stated on the form there was a 2012 court judgment of parentage in Los Angeles County and he had signed a voluntary declaration of parentage on Jadyn's birth date (in 2008); paid monthly child support; told his mother, father, sister, brother and friends Jadyn was his child; and rode bikes and listened to music with Jadyn. He also stated Jadyn spent birthdays with Anthony's family (including Anthony's mother, father and sisters) and Anthony's mother and father both attended judo practice with Jadyn.

At the contested 12-month review hearing on the same day, the court appointed counsel for Anthony (the attorney who previously made a special appearance on his behalf),[4] who advised the court that Anthony requested presumed father status. Jadyn's counsel, objecting on the ground Anthony was attempting to obtain a change of court order without filing a section 388 petition, argued Anthony had to demonstrate there were changed circumstances and the requested relief was in the child's best interest. Jadyn's counsel further stated Anthony had appeared in court more than one year late despite having been given notice of the proceedings since commencement of the case;

---

[4]    We augment the appellate record in case No. B299816 on our own motion to include the reporter's transcript of the April 23, 2019 hearing, which was included in the appellate record for case No. B302803. (Cal. Rules of Court, rule 8.155(a)(1).)

5

disagreed with Anthony's contention he had a relationship with Jadyn, who was four years old when the child last saw Anthony; pointed out the maternal grandparents' home was the only one in which Jadyn had ever lived; and emphasized Anthony had made no efforts to continue visiting Jadyn.

The court, stating it did not intend to entertain on that day any request for a change in its prior orders because there was nothing on calendar for it to consider, invited Anthony to file a section 388 petition for reconsideration of his parental status. It found Anthony remained Jadyn's alleged father and ordered no visitation at that time between Anthony and Jadyn, but stated it could reconsider visitation if Anthony were to file the petition. It also found Jadyn's mother's progress toward alleviating the causes necessitating placement to be minimal, terminated reunification services for his mother and set a selection and implementation hearing (§ 366.26) for August 19, 2019.

4. *Anthony's Section 388 Petition and the Department's Response*

On June 4, 2019 Anthony filed a section 388 petition on Judicial Council form JV-180 requesting the juvenile court change its April 17, 2018 order by finding him to be a presumed, rather than alleged, father and by providing him with reunification services. In response to the item that asked what had happened since the prior order that might change the judge's mind or what new information the judge did not have when the order was made, Anthony explained counsel had been appointed for him on April 23, 2019 and had provided the form JV-505 showing Anthony had paid child support. He also stated his name appeared on Jadyn's birth certificate and attached a copy of the certificate.

6

Responding to the question why modifying the order would be better for the child, Anthony stated it was in every child's best interest to have a presumed parent. He also stated it was in the child's best interest for Anthony to be provided with reunification services because he had a relationship with his son. He explained that, prior to Jadyn being detained, he spent time with Jadyn and took him to judo practice. He further stated Jadyn's paternal relatives maintained a close relationship with Jadyn.

On July 25, 2019 the Department filed an interim review report, which also served as its response to Anthony's section 388 petition. The Department advised the court that Anthony had not had any contact with Jadyn in the previous five years. Although Anthony said he had court-ordered visits from 2012 to 2014, during this period the family court limited his visits to once a week because of allegations he had physically and emotionally abused Jadyn; and he subsequently stopped visiting Jadyn in 2014.

The Department also reported that Jadyn's maternal grandparents said Anthony had taken Jadyn to one judo class during one visit. They told the Department Anthony, who they acknowledged was Jadyn's biological father, had begun visiting Jadyn when the child was four years old (in 2012) but only for a brief period; Anthony's visits had been for one hour; although the visits had progressed to weekend visits, the visits had stopped after Anthony started cancelling; and Anthony, who had not seen his son since Jadyn was a small child, had "just vanished."

Jadyn and his maternal grandparents also expressed concerns regarding Anthony's past visits with the child. Jadyn told the Department he had visited his father when he was four or five years old, but the "visits were not good." Jadyn did not

like his father and believed Anthony was "a bad person" who "cheated on my mom all the time." He stated, "We used to sleep in the same bed and [Anthony] would have different girls in bed." Jadyn also described an instance in which he had been punished, stating Anthony had "pulled my pants down and hit me with a belt." Jadyn said he never felt safe with Anthony. He told the Department he came home and locked all the doors and windows after a recent court hearing because he was frightened his father, who knew where he lived, would come for him. Jadyn stated he wanted to stay with "grandma and grandpa" and did not ever want to see or have visits with Anthony.

Jadyn's maternal grandparents reported Jadyn had not only become distressed and locked all the doors and windows after the court hearing but also had started biting his knuckles from anxiety arising from the possibility of having contact with his father. In addition, according to the maternal grandfather, after Anthony attempted to communicate with Jadyn and left him a message on an online videosharing platform, Jadyn became terrified and immediately deleted his online account, including all the videos he had been saving for at least two years, because he did not want to be contacted by his father.

The maternal grandparents further told the Department Anthony had failed to provide proper care and supervision during his visits with Jadyn. For example, the child had been left alone in a locked room while Anthony "partied" with his friends. They also said Anthony, who had been having romantic relations with a friend of Jadyn's mother, had asked Jadyn to lie and not tell his mother. In addition, the maternal grandparents reported Anthony had exposed the child to movies inappropriate for Jadyn's age; Anthony had cut Jadyn's hair against his wishes and

8

without his mother's consent because Anthony had wished to be a barber and had wanted to practice on the child; and instead of spending time with Jadyn, Anthony for one of the visits had left Jadyn in the paternal grandmother's home. The maternal grandparents said on the second visit with his father Jadyn had cried and after the third visit Jadyn had not wanted to go on the overnight visits.

The Department reported Anthony had a pattern of unresolved anger management issues. Anthony had a misdemeanor conviction for domestic violence in 2010, a felony conviction for domestic violence in 2015 and a misdemeanor conviction for a violation of a restraining order in 2019.[5] As set forth in the police report for the 2015 incident, which the Department attached to its response to the section 388 petition, the victim, who was at the time pregnant, stated her boyfriend Anthony had used both hands with clenched fists to punch her two times to the back of her head and one time to her mouth and then kicked her several times once she fell to the ground due to his punches.

The Department agreed a finding of presumed father status was appropriate because Anthony was Jadyn's biological father, was named on Jadyn's birth certificate, had been in a relationship with Jadyn's mother and had been partially involved in Jadyn's life before 2014. Nevertheless, it concluded Anthony, despite his brief involvement in Jadyn's life before 2014, did not

[5] The record does not indicate Jadyn or his mother was a victim of the incidents leading to Anthony's convictions, and it shows the victim of the 2019 incident was a former girlfriend with whom Anthony had fathered a different child.

9

have a relationship with Jadyn; Anthony had a pattern of instability and unresolved issues that could be detrimental to Jadyn's well-being; and reinstating family reunification services for Anthony would create an adverse childhood experience for Jadyn. The Department emphasized it believed it was not in Jadyn's best interest for the juvenile court to provide Anthony with family reunification services and did not recommend the court change its prior order to provide such services.

5. *The Hearing on Anthony's Section 388 Petition*

At the July 26, 2019 hearing on Anthony's section 388 petition, the juvenile court admitted into evidence a copy of Jadyn's birth certificate, Anthony's form JV-505 statement regarding parentage filed on April 23, 2019 and the Department's July 26, 2019 interim review report.

The Department's counsel requested the juvenile court grant in part and deny in part Anthony's section 388 petition. Explaining the Department agreed Anthony appeared to meet the legal requirements for presumed father status, she stated, "So I would submit on that request, and I would join father with that request and ask the court make that change today." However, she told the juvenile court the Department objected to Anthony's request for reunification services because Anthony failed to show a change of circumstances and granting such services did not appear to be in Jadyn's best interest.

Jadyn's counsel stated Jadyn did not want Anthony to be found to be his presumed father and argued, although presumed fathers are entitled to visitation absent a showing of detriment, there was ample evidence here that visitation would be detrimental to Jadyn. She also "strongly request[ed]" the juvenile court not provide Anthony with reunification services

10

because Anthony had absented himself from Jadyn's life and also from the juvenile court proceedings despite having received proper notice. Jadyn's counsel concluded by arguing Anthony's section 388 petition should not be granted because "[t]here are absolutely no changed circumstances" and "it is clear that it is not in the child's best interest."

In addition to reiterating facts set forth in Anthony's form JV-505 and requesting the juvenile court declare Anthony a presumed father, Anthony's counsel argued, if the court were inclined to find presumed father status, it by law had to provide Anthony with some reunification services. She also reminded the court Anthony was a nonoffending parent.

At the conclusion of the hearing the juvenile court quoted *In re Jerry P.* (2002) 95 Cal.App.4th 793, 801-802, in which this court stated, "Presumed fatherhood, for purposes of dependency proceedings, denotes one who 'promptly comes forward and demonstrates a full commitment to his paternal responsibilities—emotional, financial, and otherwise,'" and determined Anthony had "done the opposite of that." It stated Anthony had been mostly absent from Jadyn's life and, despite having knowledge of the proceedings, chose not to come forward until "the eve of a .26 hearing" to request presumed father status. Observing Anthony had told the Department's social worker he was "now ready," the juvenile court further stated, "This isn't about Father being ready. This is about Jadyn. Jadyn's been ready his whole life to have a father, but Father was nowhere to step up. This is about stability and permanence for Jadyn, and the court believes that that is best met in his current situation with his maternal grandparent[s]." The juvenile court denied Anthony's section 388 petition requesting presumed father status and reunification

11

services on the grounds that there was no change in circumstances and granting the petition was not in Jadyn's best interests.

6. *The Section 366.26 Selection and Implementation Hearing*

On July 26, 2019 the Department filed a status review report stating Jadyn was happy and thriving in his placement with the maternal grandparents. Although Jadyn loved his mother and maternal grandparents, he said he would rather live with his maternal grandparents because they loved him and he felt safe in their care. On August 15, 2019 the Department filed a section 366.26 report recommending adoption remain the permanent placement plan for Jadyn. It reported Jadyn had not had any contact with Anthony in the previous five years.

On August 19, 2019 the juvenile court continued the section 366.26 hearing to December 2, 2019. A last minute information for the court filed November 27, 2019 reported there were no concerns regarding the capability of Jadyn's maternal grandparents, who loved Jadyn and wished to adopt him, to meet the child's needs; Jadyn had told the Department he want to be adopted by them; and the Department recommended termination of parental rights.

At the December 2, 2019 hearing Anthony's attorney informed the court Anthony, who was not present, requested the matter be continued due to the appeal of the denial of his section 388 petition. The juvenile court observed a pending appeal was generally not a valid basis for a continuance. The Department's attorney requested the juvenile court terminate parental rights and proceed with the plan of adoption; Jadyn's

counsel joined in the Department's request; and Anthony's counsel objected to the termination of parental rights.

Jadyn and his mother both testified at the section 366.26 hearing. Jadyn's testimony included his affirmation he wanted to be adopted by his grandparents, whom he trusted to be good parents, and his statement he did not want Anthony "to be in the picture." After hearing argument of counsel, the juvenile court found Jadyn to be adoptable, adoption to be in the child's best interests, it would be detrimental for Jadyn to be returned to parental custody and no exception to adoption applied. The court terminated the parental rights of Anthony and Jadyn's mother. Designating Jadyn's maternal grandparents as the prospective adoptive parents, it ordered adoption to continue as the appropriate permanent plan.

## DISCUSSION

1. *Governing Law and Standard of Review Applicable to the Juvenile Court's Denial of the Section 388 Petition*

Section 388 provides for modification of juvenile court orders when the moving party presents new evidence or a change of circumstances and demonstrates modification of the previous order is in the child's best interests. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; see *In re Zacharia D.* (1993) 6 Cal.4th 435, 454 [a genetic father who "does not attain presumed father status prior to the termination of any reunification period . . . may move under section 388 for a hearing to reconsider the juvenile court's earlier rulings based on new evidence or changed circumstances"; internal fn. omitted]; see generally *In re Marilyn H.* (1993) 5 Cal.4th 295, 309 ["[s]ection 388 provides the 'escape mechanism' that . . . must be built into the process to allow the

13

court to consider new information"].) The parent seeking modification bears the burden of proving both elements. (*In re Stephanie M.*, at p. 317; *In re A.A.* (2012) 203 Cal.App.4th 597, 611-612; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47 ["[t]he parent bears the burden of showing both a change of circumstance exists and that the proposed change is in the child's best interests"]; Cal. Rules of Court, rule 5.570(e)(1), (h)(1).)[6]

"In considering whether the petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case. [Citation.] The court may consider factors such as . . . the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made sooner." (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616; accord, *In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 446-447.)

When a section 388 petition is filed after reunification services have been terminated, the juvenile court's overriding concern is the child's best interest. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) The parent's interests in the care, custody and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for permanency and stability. (*Ibid.*; *In re Vincent M.* (2008) 161 Cal.App.4th 943, 955.) Because time is of the essence for young children when it comes to securing a stable, permanent home, prolonged uncertainty is not in their best interest. (See *In re Josiah Z.* (2005) 36 Cal.4th

---

[6] Anthony does not question, and we do not address, whether the juvenile court erred when it ruled it would not consider changing his status to that of a presumed father absent a section 388 petition.

14

664, 674 ["'[t]here is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents, especially when such uncertainty is prolonged'"]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531 ["our Supreme Court made it very clear in *Jasmon O.*[, *supra*, 8 Cal.4th 398] that the disruption of an existing psychological bond between dependent children and their *caretakers* is an extremely important factor bearing on any section 388 motion"].)

A ruling on a petition filed under section 388 is "committed to the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established. . . . '"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" (*In re Stephanie M.*, *supra*, 7 Cal.4th at pp. 318-319.)

2. *Presumed Parent Status*

The Uniform Parentage Act (UPA) (Fam. Code, § 7600 et seq.), which governs parentage determinations (*Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 116), identifies "the parent and child relationship" as "the legal relationship existing between a child and the child's natural or adoptive parents . . . ." (Fam. Code, § 7601, subd. (b); *Elisa B.,* at p. 116.) In determining who qualifies as a natural parent, the juvenile courts recognize and differentiate among three categories of parents: an alleged parent, a genetic parent (referred to in the governing statutes as the "biological" parent) (see, e.g., Welf. & Inst. Code, § 361.5) and

15

a presumed parent. (*In re H.R.* (2016) 245 Cal.App.4th 1277, 1283; accord, *In re D.P.* (2015) 240 Cal.App.4th 689, 695.)

An alleged parent, one whose maternity or paternity has not yet been established, or who has not achieved presumed parent status (*In re Zacharia D., supra,* 6 Cal.4th at p. 449, fn. 15; *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 596), has a narrow range of rights in dependency proceedings, generally limited under the due process clause to notice of the proceedings so that he or she may appear and have the opportunity to challenge his parentage status. (*In re D.P., supra,* 240 Cal.App.4th at p. 695; *In re J.H.* (2011) 198 Cal.App.4th 635, 644; *In re O. S.* (2002) 102 Cal.App.4th 1402, 1408.) An alleged parent is not entitled to custody or reunification services. (*In re H.R., supra*, 245 Cal.App.4th at p. 1283; *In re D.A.* (2012) 204 Cal.App.4th 811, 824.)

A presumed parent "ranks highest" of all three categories and enjoys a full panoply of rights attendant to parenthood, including entitlement to appointed counsel (§ 317, subd. (a)), custody (assuming the court has not made a detriment finding) and reunification services. (*In re H.R., supra,* 245 Cal.App.4th at p. 1283; *In re D.P., supra,* 240 Cal.App.4th at p. 695; see generally *In re Nicholas H.* (2002) 28 Cal.4th 56, 65 [presumed parent status is intended to preserve the important relationship created between parent and child when the alleged parent has treated that child as a son or daughter].) "A biological father can be a presumed father, but is not necessarily one; and a presumed father can be a biological father, but is not necessarily one." (*In re T.R.* (2005) 132 Cal.App.4th 1202, 1209.) The UPA provides several statutory grounds for establishing a presumption of parenthood. (See, e.g., Fam. Code, §§ 7540, 7571-

16

7572, 7611.)  As pertinent here, Family Code section 7611, subdivision (d), provides "[a] person is presumed to be the natural parent of a child" if he or she "receives the child into [his or her] home and openly holds out the child as [his or her] natural child."[7]

With respect to Family Code section 7611, subdivision (d), "[p]resumed parent status is afforded only to a person with a *fully developed parental relationship* with the child." (*R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 776 (*R.M.*); accord, *In re M.Z.* (2016) 5 Cal.App.5th 53, 63.)  "A 'caretaking role and/or romantic involvement with a child's parent' is not enough to qualify." (*In re M.Z.*, at p. 63.)  "''Presumed fatherhood, for purposes of dependency proceedings, denotes one who 'promptly comes forward and demonstrates a full commitment to . . . paternal responsibilities—emotional, financial, and otherwise.'''" (*In re*

---

[7]    Anthony asserts he qualifies as Jadyn's presumed father only under Family Code section 7611, subdivision (d).  In any event, Family Code sections 7540 and 7611, subdivisions (a) through (c), are inapplicable because there is no evidence Anthony and Jadyn's mother were married or ever attempted to marry.  There is also insufficient evidence in the record of compliance with the requirements for presumed parent status under Family Code section 7570 et seq. (voluntary declaration of parentage); for example, the record is silent whether any signatures were witnessed by hospital staff or whether any declaration was filed with the Department of Child Support Services.  (See Fam. Code, §§ 7571-7572; *In re Liam L.* (2000) 84 Cal.App.4th 739, 746 ["the Legislature intended that a man who had met the statutory conditions (§ 7611), or rather established paternity by a voluntary declaration in compliance with all of the requirements of section 7570 et seq., was entitled to presumed father status"].)

17

*Cheyenne B.* (2012) 203 Cal.App.4th 1361, 1376 [obtaining a prior judgment of paternity requiring payment of child support did not necessitate a finding of presumed father status, "with its attendant rights and obligations"]; accord, *In re Jovanni B.* (2013) 221 Cal.App.4th 1482, 1488.)

"There are no specific factors that a trial court must consider before it determines that a parent has 'received' a child into the home and has established a parental relationship." (*W.S. v. S.T.* (2018) 20 Cal.App.5th 132, 145 [the juvenile court did not err in requiring biological father, to establish presumed parent status, to show more than the physical presence of child inside his home; the juvenile court's consideration of whether he had engaged in regular visitation and assumed parental responsibilities and duties as additional factors was appropriate]; see *R.M.*, *supra*, 233 Cal.App.4th at p. 774 ["[n]o single factor is determinative; rather, the court may consider all the circumstances when deciding whether the person demonstrated a parental relationship by holding out the child as his or her own and assuming responsibility for the child by receiving the child into his or her home"].)  "While the juvenile court may consider a wide range of factors in making a presumed parent determination, as appropriate to the circumstances [citation], the core issues are the person's established relationship with and demonstrated commitment to the child." (*In re Alexander P.* (2016) 4 Cal.App.5th 475, 485; accord, *In re M.R.* (2017) 7 Cal.App.5th 886, 898.)  The burden is on the person seeking presumed parent status to demonstrate the foundational facts giving rise to the presumption.  (*R.M.*, at p. 774; *S.Y. v. S.B.* (2011) 201 Cal.App.4th 1023, 1031; *In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1653.)

3. *Anthony Failed To Show the Juvenile Court Abused Its Discretion in Denying His Section 388 Petition*

a. *Change of circumstance or new evidence*

Anthony on appeal argues the juvenile court in July 2019 erred in denying his request for presumed father status because he showed he had openly acknowledged his paternity of Jadyn and accepted the child into his home. The following facts, he contends, support his argument: (1) Anthony's name is on Jadyn's birth certificate; (2) he visited Jadyn regularly over a two-year period, and the visitation included overnight stays at his home, attendance at Jadyn's birthday parties and taking Jadyn to judo classes; (3) he had been adjudged by a family law court to be Jadyn's father and was required to make support payments for the child; (4) he had attempted to contact Jadyn sometime between 2016 and 2018 on the child's videosharing platform account to continue his relationship with Jadyn; (5) the maternal grandparents acknowledged he was Jadyn's genetic (or biological) father and had, for a time, been involved in Jadyn's life; (6) Jadyn had contact with Anthony's family, including paternal grandparents, aunts and uncles; and (7) Anthony had acknowledged to his family and friends Jadyn was his child.

Although Anthony appeals the juvenile court's July 2019 denial of his section 388 petition, which sought modification of the April 17, 2018 disposition order finding him to be an alleged father, he fails to argue he established each of the elements necessary to succeed on that petition, including whether he had presented new evidence or a change of circumstance requiring modification of the prior order. He thus forfeited the issue. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["[w]hen an appellant fails to raise a point, or asserts it but fails

19

to support it with reasoned argument and citations to authority, we treat the point as waived"]; *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [appellate court's review limited to issues that have been adequately raised and supported in appellant's brief].)

In any event, he cannot establish he had presented sufficient changed circumstances or new evidence. The record shows, or is silent whether, the information on which he relied in the juvenile court to support his claim for presumed father status under Family Code section 7611, subdivision (d), existed and was available to Anthony at the time of the jurisdiction/disposition hearing, which he elected not to attend. (See *In re Eric E.* (2006) 137 Cal.App.4th 252, 256, 261 [affirming juvenile court's denial of presumed father status to biological father who had presented evidence his name was on the child's birth certificate and had signed a voluntary declaration of paternity; biological father failed to satisfy section 388's requirements in part because, relying "on events that occurred prior to [the child's] dependency proceeding," he identified no change in circumstance]; see also *In re D.B.* (2013) 217 Cal.App.4th 1080, 1092 ["'[t]he term "new evidence" in section 388 means material evidence that, with due diligence, the party could not have presented at the dependency proceeding at which the order, sought to be modified or set aside, was entered'"]; *In re H.S.* (2010) 188 Cal.App.4th 103, 105, 108-109 [because "the term 'new evidence' in section 388 must be construed to include the three requirements of new evidence, reasonable diligence, and materiality," new expert's opinion based on evidence that was previously available does not constitute "new evidence" within the meaning of section 388]; cf. *In re Alayah J.* (2017) 9 Cal.App.5th 469, 478 ["[t]o obtain an

evidentiary hearing on a section 388 petition, a parent must make a prima facie showing that circumstances have changed since the prior court order"].)

Even if Anthony's evidence, including his payment of child support, were considered, his sporadic interaction with Jadyn is a far cry from the fully developed parental relationship essential for a finding of presumed parenthood under Family Code section 7611, subdivision (d). And as Anthony concedes, because he had the burden of proof in the juvenile court, to prevail on appeal he must demonstrate the evidence compelled a finding in his favor as a matter of law. (See, e.g., *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1143; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527-1528, disapproved on another ground in *Conservatorship of O.B.* (July 27, 2020, S254938) __ Cal.5th __ [2020 Cal. Lexis 4646, *32, fn. 7].) It does not, and he thus failed to show a change of circumstance or new evidence requiring modification of the juvenile court's order finding him to be an alleged father. (See Welf. & Inst. Code, § 388, subd. (a)(1) [requiring the petition to set forth "any change of circumstance or new evidence that is alleged to require the change of order"].)

b. *Jadyn's best interests*

Because the question of Anthony's status was presented by way of a section 388 petition, it was also Anthony's burden to show it was in Jadyn's best interests for the juvenile court's prior order to be modified by elevating Anthony to a presumed father. Anthony fails to demonstrate the juvenile court abused its discretion in finding he had not carried that burden.

To be sure, Anthony contended in the juvenile court it was in every child's best interest to have a presumed parent and it was in Jadyn's best interest for Anthony to have reunification

21

services because he had a relationship with his son.  However, these arguments fail.  Once the juvenile court denied Anthony reunification services, terminated Jadyn's mother's reunification services and set the section 366.26 hearing, the focus shifted to Jadyn's needs for permanency and stability.  (See, e.g., *In re Zacharia D.*, *supra*, 6 Cal.4th at p. 447 ["'[u]p until the time the section 366.26 hearing is set, the parent's interest in reunification is given precedence over a child's need for stability and permanency'"; "'[o]nce reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability'"]; *In re G.B.* (2014) 227 Cal.App.4th 1147, 1163 ["[o]nce reunification services are terminated (or, as in this case, never ordered in the first place), the focus of the proceedings changes from family reunification to the child's interest in permanence and stability"].)  A presumed father may not necessarily be granted reunification services if he failed to attain presumed fatherhood status before that time.  (See *In re Zacharia D.*, at p. 453 ["if a man fails to achieve presumed father status prior to the expiration of any reunification period in a dependency case . . . , he is not entitled to such services under section 361.5"].)

Here, Anthony had been absent for most of Jadyn's life. Despite receiving notice of the dependency proceedings commencing at the time of the jurisdiction and disposition hearing, he did not make his first appearance until nearly 12 months later and did not file his section 388 petition seeking presumed father status until well over 12 months had elapsed from that hearing.  Notwithstanding Anthony's financial support of the child, the juvenile court reasonably found he had failed to demonstrate how granting him presumed father status at that

late stage would further Jadyn's interest in permanence and stability.  Moreover, Jadyn, anxious and distressed at the prospect of contact with Anthony and terrified Anthony would take him away from his current home, wanted to stay with his maternal grandparents, who had taken care of him his entire life. (Cf. *In re Aljamie D.* (2000) 84 Cal.App.4th 424, 432 ["[w]hile a child's wishes are not determinative of her best interests, the child's testimony that she wants to live with her mother constitutes powerful demonstrative evidence that it would be in her best interest to allow her to do so"].)  Based on the facts in the record, the juvenile court acted well within its discretion in determining Anthony had failed to demonstrate modification of its April 17, 2018 order was in Jadyn's best interests.  Its denial of Anthony's section 388 petition thus did not constitute an abuse of discretion.

4. *Anthony's Appeal of the Juvenile Court's Order Terminating Parental Rights Must Be Dismissed*

Anthony filed a notice of appeal following the juvenile court's December 2, 2019 order terminating parental rights, presumably to avoid an argument the appeal from the order denying his section 388 petition was moot.  (See *In re A.B.* (2014) 225 Cal.App.4th 1358, 1364.)  However, his appointed counsel filed a brief that raised no issues; and, following notice from his counsel, Anthony submitted no additional letter identifying any contentions he wished to raise on appeal.  Accordingly, his appeal of that order is dismissed pursuant to *In re Phoenix H.*, *supra*, 47 Cal.4th 835 and *In re Sade C.* (1996) 13 Cal.4th 952.

## DISPOSITION

The juvenile court's July 26, 2019 order denying Anthony's section 388 petition is affirmed. Anthony's appeal of its December 2, 2019 order terminating parental rights is dismissed.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.